## THE E. M. MILLARD.

(District Court, E. D. New York. December 22, 1922.)

1. **Navigable waters ⊜⇒24—Coffee can insufficient buoy for sunken vessel.**

   Where scow owned by the government sunk at night in New York Harbor, and a government employee, about 9 o'clock in the morning of the following day, moored a coffee can, 32x18 inches, in lieu of a buoy, at the edge of the scow, and libelant's tug struck the sunken scow at 1 o'clock that day, and as a result sunk, *held*, that the government was liable for the damages to the tug for not having the wreck properly buoyed within a reasonable time; the failure of the tug captain to see and interpret a coffee can as a sunken wreck warning not being negligence on his part.

2. **Evidence ⊜⇒5(2)—Matter of common knowledge that floating cans are not uncommon in New York Harbor.**

   It is a matter of common knowledge that floating cans of various sorts are not uncommon in the harbor of New York.

3. **Navigable waters ⊜⇒24—No duty to look to shore for warning of sunken wreck.**

   Where sunken scow in New York Harbor was not properly buoyed, there was no duty on the part of the captain of a tug approaching the spot to look for warning to a man on a nearby dock waving and shouting a warning to the tug.

In Admiralty. Libel by the John E. Moore Company as owner of the steam tug E. M. Millard against the United States. Decree for libelant.

Joseph S. Johnston, of Brooklyn, N. Y. (David Wallace, of New York City, of counsel), for libelant.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y. (Leslie P. Scott, Sp. Asst. U. S. Atty., of counsel), for respondent.

GARVIN, District Judge. [1] Libelant has brought this action in admiralty as owner of the steam tug E. M. Millard, claiming damages resulting from the sinking of the tug after it collided with a sunken scow which was lying alongside of berth 17c in the Wallabout Channel at the Brooklyn Navy Yard. Many of the facts, including the amount of damage, are admitted. The court has only to fix the responsibility for the sinking of the tug.

During the night of August 7–8, 1919, Scow No. 58, owned by the government, sank at her berth at the Navy Yard. A man in the service of respondent, at about 9 a. m. on the morning of August 8th, moored a coffee can, 32x18 inches, in lieu of a buoy, at the outboard edge of the scow. There were no standard buoys in the yard. The tug struck at 1 o'clock that day. The duty officer of the day gave working instructions to the tug, but gave her no warning of the sunken scow. No attempt was made by the Lighthouse Department to take action to see that the wreck was properly buoyed until after the tug struck.

Act March 3, 1899, § 15, provides:

"Sec. 15. *Obstruction of Navigation by Anchored or Sunken Vessels, Floating Logs, etc.—Sunken Vessels to be Marked and Removed.*—That it shall not be lawful to tie up or anchor vessels or other craft in navigable channels in

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

such a manner as to prevent or obstruct the passage of other vessels or craft; or to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels; or to float loose timber and logs, or to float what is known as sack rafts of timber and logs in streams or channels actually navigated by steamboats in such manner as to obstruct, impede, or endanger navigation. And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same and prosecute such removal, diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as hereinafter provided for." 30 Stat. 1152 (Comp. St. § 9920).

[2, 3] The respondent did not have the wreck properly buoyed within a reasonable time under the circumstances of this case. See The Anna M. Fahy, 153 Fed. 866, 83 C. C. A. 48. There is nothing in the record to justify a finding that a coffee can is a proper buoy. It is a matter of common knowledge that floating cans of various sorts are not uncommon in the harbor of New York. There is some suggestion that a man on the dock waved and shouted a warning to the Millard, but there is no proof that the warning, if given, was heard or seen, and there is no duty upon a tug captain to look for a warning from such a direction in connection with a danger to navigation which should have been properly buoyed. This accident occurred at a place where there should be no difficulty in placing at once the kind of buoy required by the regulations of the Lighthouse Service in case of a sunken wreck, to wit, a spar buoy painted with red and black horizontal stripes. The respondent had ten hours in which to anchor such a buoy. Its failure is negligence, and the failure of the tug captain to see and interpret a coffee can as indicating a sunken wreck in the harbor of New York was not negligence on his part.

The letter from the Superintendent of Lighthouses proves nothing for the uprights and flags were placed on the wreck after the tug was injured. The fact that they were so placed would seem to indicate that the government did not consider the can first used to be a proper and sufficient method of marking the sunken scow.

There will be a decree for libelant for $9,877.18, that being the amount of damage sustained by libelant, as stipulated.